UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALTRIA GROUP, INC.,

     Plaintiff,

  - against -

THE UNITED STATES OF AMERICA,

     Defendant.

1:06-cv-09430-RJH-FM

**<u>CHARGE TO THE JURY</u>**

# CONTENTS

1.  Role of the Court ................................................................................ 3
2.  Role of the Jury .................................................................................. 4
3.  All Persons Equal Before the Law – Corporations .............................. 6
4.  Conduct of Counsel ............................................................................ 7
5.  Burden of Proof .................................................................................. 8
6.  Evidence/What is Not Evidence ....................................................... 10
7.  Use of Juror Notes ........................................................................... 11
8.  Direct and Circumstantial Evidence ................................................ 12
9.  Inferences ........................................................................................ 13
10. Credibility of Witnesses .................................................................. 14
11. Bias .................................................................................................. 16
12. Interest in Outcome .......................................................................... 17
13. Impeachment by Prior Inconsistent Statements ............................... 18
14. Expert Witnesses ............................................................................. 19
15. Use of Deposition as Evidence ........................................................ 20
16. Summaries, Charts, and Diagrams ................................................... 21
17. Introduction to Plaintiff's Claims ................................................... 22
18. Separate Transactions ...................................................................... 24
19. IRS Determination Not Controlling ................................................. 25
20. Role of Federal Agencies Other than the IRS .................................. 26
21. The Four Deductions at Issue .......................................................... 27
22. Two Legal Doctrines at Issue .......................................................... 28
23. Substance Over Form Generally ...................................................... 29
24. Substance Over Form: Transaction Terms Not Controlling .............. 30
25. Substance Over Form: Three Issues for the Jury to Decide .............. 31
26. Substance Over Form: Consider Transactions as a Whole ................ 32
27. Substance Over Form: Acquisition and Retention of Property or
    Leasehold Interest ............................................................................ 33
28. Substance Over Form: Genuine Debt ............................................... 35
29. Substance Over Form: Transaction Expenses ................................... 37
30. Economic Substance ........................................................................ 38
31. Economic Substance:  Profit Requirement ...................................... 40
32. Right to See Exhibits and Hear Testimony ...................................... 41
33. Duty to Deliberate/Verdict .............................................................. 42
34. Selection of Foreperson ................................................................... 43
35. Return of Verdict ............................................................................. 44

1.      **Role of the Court**

You have now heard all the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On the legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  You will receive a copy of these instructions to take with you into the jury room.

You should not be concerned about the wisdom of any legal rule that I state.  Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than the one I give you.

2.        **Role of the Jury**

Your role, as I have earlier said, is to consider and decide the fact issues in this case.  You, the members of the jury, are the sole and exclusive judges of the facts.  You pass upon the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may exist in the testimony; you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence.

In determining the facts, you should rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is anything I may have said during the trial or may say during these instructions about a fact issue to be considered evidence of your own independent recollection.  It is your own independent recollection of the evidence that controls.  In this connection, remember that a question put to a witness is never evidence.  Only the answer is evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.

If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence – not the lawyers', and not mine – that controls.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether Plaintiff or Defendant has presented the more convincing evidence on any issue.

I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses.  These questions were intended only for clarification or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other of the witnesses.  It is critically important that you understand that I wish to convey absolutely no opinion as to the verdict you should render in this case, and that even if I did convey such an opinion, you would not be obliged in any way to follow it.

In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice or passion for or against any party, and without regard to what the reaction of the parties or the public to your verdict may be.  I will later discuss with you how to pass upon the credibility of witnesses.

**3.      All Persons Equal Before the Law – Corporations**

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation and the government are entitled to the same fair trial as a private individual.  All persons, including corporations, the government, and other organizations stand equal before the law, and are to be treated as equals.

**4.**      **Conduct of Counsel**

It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences out of the hearing of the jury.  All those questions of law must be decided by me, the Court.  You should not show any prejudice against an attorney or its client because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked the court for a ruling on the law.

Furthermore, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

5.      **Burden of Proof**

As this is a civil case, the Plaintiff has the burden of proving that it is entitled to its claims – here, for tax deductions – by a preponderance of the evidence.  This means that the Plaintiff has the burden of proving by a preponderance of the evidence each and every disputed element of its claims and damages.  If you find that the Plaintiff has failed to establish any claim by a preponderance of the evidence, you must decide against it on that claim.

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It does not mean the greater number of witnesses or the greater length of time taken by either side.  The phrase refers to the quality of the evidence – that is, its persuasiveness, the weight, and the effect that it has on your minds.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in the evidence, regardless of who may have produced them.

This concept of a preponderance of the evidence is often illustrated with the idea of scales.  In considering whether Plaintiff has met its burden of proof on a claim, you put on one side all of the credible evidence favoring Plaintiff and on the other all the credible evidence favoring the Defendant.  If the scales tip toward the Plaintiff because Plaintiff's evidence is weightier, you must find in Plaintiff's favor.  But if the scales are evenly balanced (maybe yes, maybe no), or if they tip in Defendant's favor, then you must find for Defendant.

Some of you no doubt have heard of "proof beyond a reasonable doubt," which is the standard of proof that is used in a criminal trial.  A plaintiff in a civil case does not have to satisfy that requirement, and you should put it out of your mind.

**6.      Evidence/What is Not Evidence**

The evidence from which you are to decide what the facts are consists of:

1.   The sworn testimony of witnesses;

2.   The documents and exhibits which have been received into evidence; and

3.   Any stipulation agreed to by the parties.

Nothing else is evidence – not what the lawyers say, not what I say, and not anything you heard outside the courtroom.

**7.      Use of Juror Notes**

Some of you took notes during the trial.  If you elected to take notes, your notes should be used only as memory aids. You should not give your notes greater weight than your independent recollection of the evidence. You should rely upon your own independent recollection of the evidence or lack of evidence and you should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any more weight than the memory or impression of each juror.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

**8.**     **Direct and Circumstantial Evidence**

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his own senses – in other words, something seen, felt, touched, heard or tasted.  Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  Here is a simple example of circumstantial evidence:

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that is has been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

**9.      Inferences**

In their closing arguments, counsel may have in effect asked you to infer, on the basis of your reason, experience, and common sense, from one or more proven facts, the existence of some other facts.

An inference is not a suspicion or a guess.  It is a logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  Plaintiff asks you to draw one set of inferences, while Defendant asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

**10.      Credibility of Witnesses**

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his testimony.  You are the sole judges of the credibility of each witness and of the importance of witness testimony.

How do you determine where the truth lies?  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility that a witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony.

You should consider the opportunity each witness had to see, hear and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency, or lack of consistency and its corroboration, or lack of corroboration, with other believable testimony.  You watched the witnesses testify (and heard their deposition testimony read).  Everything a witness said or did on the witness stand counts in your determination.  How did the witness appear?  What was the witness' demeanor while testifying?  Often it is not what people say, but how they say it, that moves us.

In deciding whether to believe a witness, keep in mind that people sometimes forget things.  You need to consider, therefore, whether in such a situation the witness's testimony reflects an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important factor or with only a small detail.

If you find that any witness has willfully testified falsely as to any material fact (that is, as to an important matter) the law permits you to disregard completely the entire

testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  You are not required, however, to consider such a witness as totally unworthy of belief.  You may accept so much of the witness' testimony as you deem true and disregard what you feel is false.  As the sole judges of the facts, you must decide which of the witness you will believe, what portion of the testimony you accept, and what weight you will give to it.

In other words, what you must try to do in deciding credibility is to size up a witness up in light of his demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your life experience.

**11.     Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

**12.     Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such an interest in the outcome of the case creates a motive to testify falsely and may sway a witness to testify in a way that advances the witness's own interest.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony, and accept it with great care.

Keep in mind though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  An interested witness is not necessarily less credible than a disinterested witness.  The fact that a witness is interested in the outcome of the case does not mean that he has not told the truth.  It is for you to decide, based upon your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

**13.      Impeachment by Prior Inconsistent Statements**

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability.  Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**14.** **Expert Witnesses**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

**15.     Use of Deposition as Evidence**

During the trial, certain testimony has been presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented in writing under oath.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

**16.      Summaries, Charts, and Diagrams**

The parties have presented charts, summaries, and diagrams.

These materials were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these materials than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, summaries, and diagrams correctly present the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider the charts, summaries, and diagrams if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

**17.     Introduction to Plaintiff's Claims**

I will now instruct you on the law that governs Plaintiff's claims in this case.

This is a tax refund action.  The Plaintiff, Altria, seeks to recover income taxes it asserts were wrongfully collected from it by the United States for the years 1996 and 1997.  The disagreement between Altria and the Government relates to the proper tax treatment of four transactions.  The transactions involve two power plants, a passenger rail maintenance facility, and a wastewater treatment facility.  During the trial, these four transactions have been referred to as the Seminole, Oglethorpe, MTA, and Vallei transactions.  I will call Seminole, Oglethorpe, MTA, and Vallei the "lessees," and refer to the properties involved in the transactions as the "facilities."

As you heard during the trial, the transactions were actually entered into by a subsidiary of Altria called Philip Morris Capital Corporation or PMCC.  Because PMCC is a subsidiary of Altria, its business operations are reported as part of Altria's tax returns.  So, when I refer to Altria, I mean both Altria and PMCC.

In three of the four transactions (Seminole, Oglethorpe, and Vallei), Altria entered into an agreement called a "head lease," under which it claims to have purchased and become the owner of an interest in the facility.  Although the agreement is called a "lease," it may be treated as a "sale" under the law if the term of the lease is longer than the expected useful life of the facility and other conditions, which I will discuss shortly, are also met.  In the remaining transaction (MTA), Altria entered into an agreement also called a "head lease," under which it claims to have only acquired the right to use and occupy the facility until March 31, 2040, a period less than the useful life of the facility.

In all four transactions, Altria simultaneously entered into an agreement called a "facility lease," under which it claims to have leased the facility back to the original

owner – that is, to Seminole, Oglethorpe, MTA, or Vallei.  The "facility lease" has also been called the "leaseback."  For clarity, I will also call it the "leaseback" in these instructions.  At the end of the leaseback, each party had certain options as to what was going to be done with the property.

On its corporate tax returns for 1996 and 1997, Altria reported rental income in the amount payable to it under the leaseback arrangements with Seminole, Oglethorpe, MTA, and Vallei.  Altria also claimed four kinds of deductions related to the transactions, that is, deductions for depreciation, lease amortization, interest expenses, and transaction expenses.  At the conclusion of its regular audit of Altria's 1996 and 1997 tax returns, the Internal Revenue Service ("IRS") disputed Altria's tax treatment of each of the four transactions.  It disregarded the rental income reported by Altria, and it disallowed the deductions for depreciation, lease amortization, interest expenses, and transaction expenses.  Altria paid additional taxes under protest and brought this lawsuit seeking a refund of those taxes.  The Government denies that Altria is entitled to a refund and contends that the deductions were properly disallowed.

**18.     Separate Transactions**

This case involves four separate transactions, and you are required to apply the

law to each transaction separately.  For convenience, I will sometimes refer to the

Seminole, Oglethorpe, MTA, and Vallei transactions collectively as the "transactions."

**19.**     **IRS Determination Not Controlling**

It is up to you, the jury, to determine whether Altria is entitled to a refund of the additional income taxes it paid for the 1996 and 1997 tax years.  The fact that, after a regular audit, the IRS claimed that Altria owed additional tax as a result of the disputed transactions is entitled to no weight and should have no bearing on your deliberations.

**20.      Role of Federal Agencies Other than the IRS**

During trial, you heard evidence about the involvement of the Federal Transit Administration and the Rural Utilities Service in some of the transactions.  The role of those agencies was limited to assuring that the transactions did not violate the agencies' requirements.  The Federal Transit Administration and the Rural Utilities Service do not have any authority over tax matters.  You should not consider any statements or approvals by these agencies to indicate that any particular tax treatment is appropriate for the transactions in this case.  The tax treatment is what you are here to decide.

**21.      The Four Deductions at Issue**

You do not have to worry about the proper computation of Altria's tax liability or the appropriate dollar amount of the deductions.  Instead, you must decide whether or not Altria is entitled to the four types of deductions it has claimed.  The four types of deductions are:

1.  **Depreciation** (Oglethorpe, Seminole, and Vallei)

2.  **Amortization of Lease Payment** (MTA)

3.  **Interest Expense** (all transactions)

4.  **Transaction Expense** (all transactions)

The first of these deductions, depreciation, applies to the exhaustion, wear and tear of property used in the trade or business.  The deduction represents the reduction of the value of the asset during the year through wear and tear.  This deduction is claimed on the Seminole, Oglethorpe, and Vallei transactions.

The second deduction, for amortization, is quite similar to depreciation, but applies to leasehold interests instead of property owned by the taxpayer.  This deduction is claimed on the MTA transaction.

The third deduction, for interest expense, applies to all interest paid or accrued within the taxable year on indebtedness.  The law defines "interest" as compensation for the use of money.  "Indebtedness" is defined as an unconditional and legally enforceable obligation for the payment of money.  This deduction is claimed on all transactions.

The last deduction, for transaction expense, applies to all the ordinary and necessary expenses paid or incurred in carrying on any trade or business.  This deduction is claimed on all transactions.

**22.**      **Two Legal Doctrines at Issue**

To be entitled to these deductions, Altria must prove two things.  First, Altria must prove that the substance of the transactions was consistent with their form, under a legal doctrine known as "substance over form."  Second, Altria must show that the transaction had what the law calls "economic substance."  I will now describe both of these legal doctrines in some detail.

**23.**     **Substance Over Form Generally**

Turning to the "substance over form" doctrine, it is a well established principle of tax law that a transaction's substance, not its form, determines its treatment for tax purposes.  That means that how a transaction is taxed is determined by its true nature, rather than by the name the parties may use in describing it.  In determining a transaction's true substance, the surrounding circumstances and economic realities override any label or name suggested by the transaction's form, or any label or name reflected on the documents that outline the transaction.  Formal written documents do not necessarily determine how a transaction should be taxed.  Thus the fact that a document refers to Altria as the "owner" or the "lessor" does not necessarily mean that Altria should be considered by you as the true owner or true lessor for tax purposes.

Nevertheless, the law provides that the form of a transaction must be respected for tax purposes if that form is consistent with the transaction's substance.  The tax law, in other words, will respect the form of a transaction if it accurately reflects the underlying rights and responsibilities held and allocated between the parties to a transaction.

**24.     Substance Over Form: Transaction Terms Not Controlling**

In these instructions, I am using terms like "sale," "rent," "loan," "head lease" and "sublease." Altria and the Government agree that these terms were used by the parties to the transactions to describe the form of the transactions, and that these terms are used in the documents the parties drew up to memorialize the transactions.  Altria and the Government disagree, however, about whether the terms accurately describe the substance of the transactions.  For example, Altria and the Government disagree about whether Altria became the true "owner" of the Oglethorpe, Seminole, and Vallei facilities, and whether the bank lenders, in substance, "loaned" money to Altria.

You should not interpret my use of these terms to express any view as to the substance of the transactions.  I am merely using the terms to describe the transactions as they were memorialized in the transaction documents.  It is your job to determine the substance of the transactions.

**25.    Substance Over Form: Three Issues for the Jury to Decide**

In this case, you must decide three questions based on the "substance over form"

doctrine:

1.    Whether Altria obtained a genuine ownership interest (or in the case of MTA, a genuine leasehold interest) in the facilities, so that it is entitled, as owner, to tax deductions for depreciation (or amortization in the case of MTA);

2.    Whether the loans between Altria and the bank lenders constitute genuine indebtedness, so that Altria is entitled to deductions for interest paid on the loans; and

3.    Whether Altria incurred transaction expenses in connection with the acquisition of a genuine ownership interest (or in the case of MTA, a genuine leasehold interest) in the facilities.

**26.      Substance Over Form: Consider Transactions as a Whole**

In considering these issues, you should analyze the multiple steps of the transactions by their overall effect.  If you find that all the steps in a given transaction are related, you may consider those steps as a single transaction, and consider the substance of that single transaction.  You should form a realistic view of the entire transaction, and determine whether Altria obtained a genuine ownership interest (or a genuine leasehold interest in the case of the MTA) in the facilities and whether the loans between Altria and the bank lenders constitute genuine indebtedness.

**27.      Substance Over Form: Acquisition and Retention of Property or Leasehold Interest**

The first question you must decide under the substance over form doctrine is whether Altria obtained a genuine ownership interest in the Seminole, Oglethorpe, and Vallei facilities, and a genuine leasehold interest in the MTA facility.  The law says that when someone acquires such an interest, she has the "benefits and burdens" of ownership (or the benefits and burdens of a lease interest), because there are certain rights and responsibilities that an owner of property (or a leasehold interest, in the MTA facility) normally acquires and retains.

In determining whether Altria acquired and retained the benefits and burdens of ownership (or the benefits and burdens of a lease interest), you must put aside the labels used or names given to the documents and transactions, and decide whether Altria actually acquired and retained a genuine ownership interest in the Seminole, Oglethorpe, and Vallei facilities, and a genuine leasehold interest in the MTA facility.  That is, you must decide whether, in 1996 and 1997, the allocation of substantive rights and responsibilities in the facilities among Altria and the lessees reflects Altria's acquisition and retention of a genuine ownership interest in the Seminole, Oglethorpe, and Vallei facilities, and a genuine leasehold interest in the MTA facility.

In your analysis, you must consider all the relevant facts and circumstances surrounding the transactions.  For each transaction, the factors you may consider include, but are not limited to, the following:

1.  **<u>Control Over the Facility</u>**.  Whether Altria acquired and retained significant and genuine attributes of an owner/lessor, or whether the other party in the transaction – Seminole, Oglethorpe, Vallei, or the MTA – retained significant control over the facility;

2. **Equity Investment**.  Whether Altria made a meaningful equity investment in the facility, and whether Altria was at risk of losing its equity investment;

3. **Cash Flows**.  Whether there were significant cash flows between the parties to the transaction;

4. **Business Realities**.  Whether the transaction was motivated by legitimate business purposes, or solely by a desire to create tax benefits;

5. **Regulatory Realities**.  Whether the transaction was motivated by the regulatory or legal environment in which the parties to the transaction were operating;

6. **Residual Useful Life**.  Whether, at the time the transaction began, the facility had an expected useful life beyond the leaseback that Altria could benefit from.  In considering this factor, you may consider the options available to the parties at the end of the initial leaseback, including the likelihood that the lessee would exercise its purchase option;

7. **Residual Value**.  Whether, at the time the transaction began, it was reasonable to expect that the facility would have meaningful value at the end of the leaseback that Altria could benefit from.  In considering this factor, you may consider the options available to the parties at the end of the initial leaseback, including the likelihood that the lessee would exercise its purchase option; and

8. **Residual Value Risk**.  Whether, at the time the transaction began, Altria had the potential to benefit from an increase in the facility's value and suffer a loss of its equity investment in the facility as a result of a decrease in the facility's value.  In considering this factor, you may consider the options available to the parties at the end of the initial leaseback, including the likelihood that the lessee would exercise its purchase option.

I emphasize, however, that no single factor is determinative.  You must consider and give the appropriate weight to all the relevant facts and circumstances.  In the end, the question is whether Altria retained significant and genuine attributes of traditional owner (or lessor) status.  What those attributes are depends upon the facts as you find them.

- 34 -

**28.     Substance Over Form: Genuine Debt**

The next issue you must decide under the "substance over form" doctrine is whether Altria incurred genuine indebtedness in the transactions.  As I already noted, the law provides a tax deduction for all interest paid or accrued within the taxable year on indebtedness.  The law defines "interest" as compensation for the use of money.  "Indebtedness" is defined as an unconditional and legally enforceable obligation for the payment of money.  The question for you is whether Altria incurred genuine indebtedness.

To answer this question, you must consider the substance and economic reality of the loans based on all the facts and surrounding circumstances.  For each transaction, the factors you may consider include, but are not limited to: (1) the extent to which Altria incurred an unconditional and legally enforceable obligation for the payment of money; (2) the extent to which interest paid by Altria represents compensation for the use of money; (3) the extent to which the parties' obligations are circular; (4) the extent to which Altria could use the money after the transactions' closings; (5) the extent to which Altria has relieved itself of future repayment obligations; and (6) the non-recourse nature of the loans – that is, whether Altria is liable for the loans beyond the collateral that secures them – and whether Altria has economic incentives to pay the loans.

With respect to the third, fourth, and fifth factors, let me remind you of my earlier instruction about viewing the transactions as a whole.  If you find that all the steps in a given transaction are related, you may consider those steps as a single transaction, and consider the substance of that single transaction.

With respect to the sixth factor, I instruct you that the fact that a debt is nonrecourse does not necessarily mean the debt is not genuine.  Nonrecourse debt may be

recognized as genuine if, after considering all other factors, there is a reasonable relationship between the amount of the debt and the value of the securing asset, and the borrower has economic incentives to pay the debt.

Let me emphasize again that no single factor is determinative. You must consider and give the appropriate weight to all the relevant facts and circumstances in determining whether the loans between Altria and the bank lenders constitute genuine indebtedness.

**29.      Substance Over Form: Transaction Expenses**

The last issue you must decide under the "substance over form" doctrine is whether Altria incurred transaction expenses in connection with the acquisition of a genuine ownership interest (or in the case of MTA, a genuine leasehold interest) in the facilities.  The tax code allows a business to deduct the ordinary and necessary expenses it incurs in connection with its business.  If you determine that the professional, banking, and other expenses Altria incurred were incurred in connection with the acquisition of a genuine ownership (or leasehold) interest, you must find that Altria incurred deductible transaction expenses.  On the other hand, if you determine that Altria did not acquire a genuine ownership interest in the Seminole, Oglethorpe, and Vallei facilities (or a genuine leasehold interest in the MTA facility), you must find that Altria did not incur deductible transaction expenses.

**30.**     **Economic Substance**

Let's turn now to the concept of "economic substance."

A transaction lacks economic substance if it has no business purpose or economic effect other than the creation of tax deductions.  If the transactions at issue here lack economic substance, Altria is not entitled to any of the deductions it claimed on its 1996 and 1997 tax returns.

There are two parts to the economic substance test: "business purpose" and "economic effect."  The "business purpose" inquiry concerns the taxpayer's motives for entering into the transaction.  For each transaction, you should ask:  Was Altria's sole motivation for purchasing (or in the case of MTA, leasing) and then leasing back the facility to achieve large tax deductions during the early years of the subleases?  In making this determination, you may analyze the transactions from the perspective of a prudent investor.  That is, you may ask whether a reasonable person would have invested in these transactions apart from tax benefits, given the kind of information that was available to Altria when it entered into the transactions.  On this issue of "business purpose," you may consider the net present value of future cash flows.  In deciding whether Altria entered into the transactions for a business purpose or solely for the purpose of claiming tax deductions, you should give greater weight to objective facts about the transactions than to a participant's statement of intent.

The "economic effect" inquiry requires an objective determination of whether a reasonable possibility of profit from the transaction existed apart from tax benefits.  For each transaction, you should ask:  Does the transaction offer a reasonable opportunity for economic profit, that is, profit exclusive of tax benefits?

The economic substance test is flexible.  If you find with respect to a particular transaction that Altria lacked a business purpose other than tax avoidance, or lacked a potential for profit beyond the creation of tax benefits, you may find that the transaction should not be respected for tax purposes.  Let me emphasize, however, that you must consider both the "business purpose" and "economic effects" inquiries before reaching a conclusion as to the economic substance of a transaction.

**31.**     **Economic Substance:  Profit Requirement**

You heard testimony about the concept of profit, so let me add a few words about the "economic effect" part of the economic substance test.

To determine whether the transactions offered Altria a reasonable opportunity for a non-tax-related profit, you should look to the amount of money that Altria could reasonably have expected to receive over the course of a transaction.  If you find that the amounts Altria reasonably expected to receive exceed the amounts Altria invested in the transaction, then you should find that the transaction satisfies the profit requirement.  On this issue of "economic effect" (unlike the "business purpose" inquiry), you should not consider the net present value of future cash flows.  If you find that Altria could not reasonably expect to at least recover its initial investment, you should find that the transaction does not satisfy the profit requirement.

**32.**     **Right to See Exhibits and Hear Testimony**

Now, ladies, you are about to go into the jury room and begin your deliberations. All of the exhibits that have been admitted into evidence will be available to you.  If you want any exhibit, you may request it.  If you want any of the testimony read, you may also request that.  Please remember that if you do ask for testimony, the reporter must search through his or her notes and the lawyers must agree on what portions of testimony may be called for, and if they disagree, I must resolve these disagreements.  That can be a time-consuming process.  So please try to be as specific as you possibly can in requesting portions of the testimony, if you do.

Your requests for exhibits and testimony – in fact any communication with the Court – should be made to me in writing, signed by your foreperson, and given to one of the Marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a verdict is reached.

**33.      Duty to Deliberate/Verdict**

It is for you, and you alone, to decide whether the Plaintiff has sustained the burden of proof on its claims with respect to each element of those claims as I have explained them to you.  If you find that the Plaintiff has succeeded on a claim, you should return a verdict in his favor on that claim.  If you find that the Plaintiff failed to sustain his burden on any element of a claim, you should return a verdict in favor of Defendant on that claim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for yourself but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of the jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

**34.     Selection of Foreperson**

When you retire, you should elect one member of the jury as your foreperson.

Your foreperson will preside over the deliberations and speak for you here in open court.

The foreperson has no greater voice or authority than any other juror.

The foreperson will send out any notes and, when the jury has reached a verdict,

she will notify the Marshal that the jury has reached a verdict.

**35.     Return of Verdict**

I will give you a verdict form to be filled in by the jury.  The purpose of the questions on the form is to help us – the Court, and counsel for the Plaintiff and the Defendant – to understand what your findings are.  I will hand this form, which contains a set of questions, to the Deputy Clerk who will give it to you so that you may record the decision of the jury with respect to each question.

No inference is to be drawn from the way the questions are worded so as to what the answer should be.  The questions are not to be taken as any indication that I have any opinion as to how they should be answered.

Before the jury attempts to answer any question, you should read all of the questions, and make sure that everyone understands each question.  Before you answer the questions, you should deliberate in the jury room and discuss the evidence that relates to the questions you must answer.  When you have thoroughly considered the questions and the evidence that relates to those questions, record the answers to the questions on the verdict form.  Remember, all answers must be unanimous.

After you have reached a verdict and your foreperson has filled in the verdict form that has been given to you, each of you should sign and date it, and then advise the Marshal outside your door that you are ready to return to the courtroom.

I will stress that you should be in agreement with the verdict which is announced in Court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

I thank you for your time and attentiveness.